UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| INTERNATIONAL LONGSHORE AND<br>WAREHOUSE UNION, LOCAL 40,<br><br>Plaintiff,<br><br>v.<br><br>COLUMBIA GRAIN, aka<br>WILLAMETTE STEVEDORING,<br><br>Defendant. | Case No.: 3:13-CV- 00513-AC<br><br>**AMENDED**<br>FINDINGS AND<br>RECOMMENDATION |

Acosta, Magistrate Judge:

*Introduction*

Plaintiff International Longshore and Warehouse Union, Local 40 ("Local 40") filed this action against defendant Columbia Grain ("Columbia") under the Labor Management Relations Act, 29 U.S.C. § 185(a) ("LMRA"). Local 40 seeks to compel Columbia, as an alter ego of

**AMENDED** FINDINGS AND RECOMMENDATION 1                                                                     *{JGM}*

Willamette Stevedoring ("Willamette"), to arbitrate a contractual grievance arising out of a collective bargain agreement ("CBA") entered into between Local 40 and Willamette (the "Agreement"). Columbia maintains it is not a party to the Agreement and that Local 40 has failed to sufficiently allege that Columbia, as the parent corporation, is obligated under the Agreement signed by its subsidiary, Willamette.

Columbia moves to dismiss Local 40's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. The court finds that Local 40 has failed to adequately allege that Columbia is an alter ego of Willamette, that Columbia has breached the Agreement, and that Columbia should be compelled to arbitrate the dispute. Accordingly, Columbia's motion to dismiss should be granted without prejudice and Local 40's request for leave to re-plead should be granted.

*Background*

Local 40 is a labor organization representing the employees of Columbia. (Compl. ¶ 2.) The Agreement establishes conditions under which Columbia's employees work and also provides a grievance and arbitration process to facilitate resolution of disputes arising under the terms of the Agreement. (Compl. ¶ 5.) In January 6, 2013, Local 40 filed a grievance against Columbia under the Agreement alleging a lost work claim ("the Grievance"). (Compl. ¶ 6.)

In February 2013, Columbia informed Local 40 that it would not process the Grievance because it had no obligation to honor the Agreement. (Compl. ¶ 7.) Local 40 then filed this action claiming a violation of the LMRA, based on Columbia's refusal to arbitrate the Grievance under the terms of the Agreement. Local 40 seeks an order requiring Columbia to arbitrate the Grievance. (Compl. ¶¶ 10-11.) Local 40 alleges that Willamette is a wholly-owned and controlled subsidiary of Columbia and is therefore bound by and subject to the Agreement and the arbitration provision. (Compl. ¶ 7.) More specifically, Local 40 alleges that Columbia is an

AMENDED FINDINGS AND RECOMMENDATION 2                                       *{JGM}*

alter ego of Willamette. (Compl. ¶ 2.) In support of this claim, Local 40 alleges that the two companies, Columbia and Willamette, "share common ownership, common management, centralized control of labor relations, and integration of operations." (Compl. ¶ 2.) Local 40 also alleges that "Columbia performs the same work in the same location as Willamette." (Compl. ¶ 7.)

Columbia moves to dismiss Local 40's complaint. Columbia asserts it is not a party to the Agreement and that Local 40 fails to sufficiently allege a basis for applying the Agreement executed by its subsidiary, Willamette, to Columbia as the parent corporation. (Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem") at 2.) Columbia notes that Local 40's complaint is "devoid of factual allegations" and rests on mere recitation of the "threshold single employer determination and legal conclusion that Columbia is an alter ego of its subsidiary". (Def.'s Mem. at 4.)

## *Legal Standard*

Federal Rule of Civil Procedure ("Rule") 8(a) governs pleadings and calls for "a short and plain statement of the claim showing that the pleader is entitled to relief [.]" FED. R. CIV. P. 8(a)(2)(2011). A motion to dismiss premised on Rule 12 (b)(6) challenges the allegations in the complaint as insufficient to state a claim for relief. FED. R. CIV. P. 12(b)(6).

In *Bell Atl.Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the Court emphasized the need to include sufficient facts in the pleading to give proper notice of the claim and its basis: "While a complaint attacked by a Rule 12 (b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (alteration omitted). "Factual allegations must be enough to raise a right

to relief above the speculative level." *Id.* Even so, the Court noted that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and 'that a recovery is very remote and unlikely.'" *Id.* at 556. (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

In *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), the Court identified two principles informing the decision in *Twombly.* First, the court must assume as true all facts asserted in a pleading, but it need not accept as true any legal conclusion set forth in a pleading. Second, the complaint must set forth a plausible claim for relief and not merely a possible claim for relief. The Court advised that "[d]etermining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1949-50 (*citing Iqbal v. Hasty,* 490 F.3d 143, 157-158 (2nd Cir. 2007)). The "mere possibility" of misconduct is not enough. *Id.* at 679. In conclusion, the Court wrote:

> While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.*

The Ninth Circuit further explained the *Twombly-Iqbal* standard in *Moss v U.S. Secret Service,* 572 F.3d 962 (9th Cir. 2009). The *Moss* court reaffirmed the *Iqbal* holding that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Moss,* 572 F.3d at 969 (quoting *Iqbal,* 556 U.S. at 678). The court in *Moss* concluded by stating: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inference from that content must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.* at 969.

The court's review is limited to the face of the complaint, any documents referenced in the complaint, and those matters of which the court may properly take judicial notice. *Swartz v. KPMG LLP,* 476 F.3d 756, 763 (9th Cir. 2007). Otherwise, as a general matter, a district court may not consider any material outside of the pleading when ruling on a Rule 12 (b)(6) motion. *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001). A motion to dismiss pursuant to Rule 12 (b)(6) tests the sufficiency of the complaint, not the merits of the case. *Gibson v. City of Chicago,* 910 F.2d 583, 586 (7th Cir.1990).

*Discussion*

For purposes of the present motion to dismiss, the court takes the following facts alleged in the complaint as true. Columbia and Willamette are employers engaged in an industry affecting commerce. (Compl. ¶ 3.) Local 40, a labor organization under the LMRA, and Willamette are parties to the Agreement which establishes the conditions under which Columbia's employees work. (Compl. ¶ 6.) The Agreement also provides a grievance and arbitration processes in case of a dispute between the parties. (Compl. ¶ 5.) Local 40 filed a grievance challenging lost work under the parties' contract and that the work is within the Agreement's jurisdiction. (Compl. ¶ 6.) Columbia informed Local 40 that it would not honor the Agreement and that it would not process Local 40's grievance. (Compl. ¶ 7.)

Local 40 alleges that Columbia is the alter ego of Willamette. (Compl. ¶ 2.) In support of this contention, Local 40 maintains that Columbia and Willamette share common ownership, common management, centralized control of labor relations, and integration of operations. *(Id.)* Local 40 contends that Willamette is a wholly-owned and controlled subsidiary of Columbia, and that Columbia performs the same work in the same location as Willamette. (Compl. ¶ 7.) Accordingly, Local 40 argues that under the alter ego theory, Columbia is in breach of the Agreement and should be required to arbitrate the grievance. (Compl. ¶ 2.)

AMENDED FINDINGS AND RECOMMENDATION 5                                          {JGM}

I. <u>Liability Under the Alter Ego Theory</u>

Columbia argues that the complaint contains only conclusory statements as to Columbia's relationship with Willamette, lacking any factual basis for the alleged alter ego relationship. (Def.'s Memo at 3.) As Columbia is not a signatory to the Agreement, Local 40's theory of liability necessarily depends on it sufficiently alleging that Columbia is bound to the Agreement. "Arbitration arises as a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Drury v. Assisted Living Concepts, Inc.*, 245 Or. App. 217, 1164-65 (2011). Nonetheless, a nonsignatory employer can be subject to a CBA if the complaining party prevails under the alter ego theory. *UA Local 343 United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, AFL-CIO v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465 (9th Cir. 1994).

Under the alter ego theory, a non-union company can be bound by the terms of a CBA signed by a union company if the two companies: (1) operate as a single employer; and (2) if the non-union company is being used in a sham effort to avoid collective bargaining obligations, rather than for the pursuit of legitimate business objectives untainted by union animus. *A. Dariano & Sons, Inc. v. Dist. Council of Painters No. 33*, 869 F.2d 514, 519 (9th Cir.1989); *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Symmetry Const. Servs. Corp.*, CV-09-033-ST, 2011 WL 2160575, at *4 (D. Or. May 31, 2011). The alter ego theory was developed by the courts to guard against employers avoiding their collective bargaining obligations. *Carpenters' Local Union No. 1478 v. Stevens*, 743 F.2d 1271, 1276 (9th Cir. 1984). *See also Symmetry*, 2011 WL 2160575, at *4-5 ("the second element of the alter ego analysis requires evidence of an intent to avoid collective bargaining obligations").

*A. "Single Employer"*

To determine if two distinct business entities are to be treated as a single employer the court must consider: (1) centralized control of labor relations; (2) common management; (3) interrelation of operations; and (4) common ownership and financial control. *J.M. Tanaka Const., Inc. v. N.L.R.B.,* 675 F.2d 1029, 1033 (9th Cir. 1982). These factors are not controlling nor need all be present in every case. *Id.* The most important is the third factor, which can be demonstrated either by "showing common control of day-to-day labor matters, or by showing that the person in charge of the union company's labor relations made the decision that the second company would be non-union." *Symmetry,* 2011 WL 2160575, at * 4.

The finding of a single employer ultimately depends on all the circumstances of the case. *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers, Gen. Truck Drivers, Office Food & Warehouse Local 952 v. Am. Delivery Serv. Co., Inc.,* 50 F.3d 770, 775 (9th Cir. 1995). Facts that would also support the elements of the single employer status include: ownership, and management by one person for both the union and nonunion companies; both companies sharing the same credit account; same employees working for both companies; and both companies exchanging materials and supplies. *Nor-Cal,* 48 F.3d at 1471.

Under federal pleading standards, Local 40 has not adequately alleged that Columbia and Willamette are a single employer. As required by Rule 8(a), Local 40's complaint gives Columbia fair notice of the claim against it. Nonetheless, the facts that Local 40 alleges, when taken as true, do not plausibly state the single employer element of the alter ego theory. Local 40's sole and conclusory allegations that Columbia and Willamette perform the same work in the same location and that Willamette is a wholly-owned and controlled subsidiary of Columbia do not sufficiently state facts to plead the single employer element.

B.  *"Sham Transaction"*

The focus of the alter ego doctrine is on the existence of a disguised continuance or an attempt to avoid the obligations of a CBA through a sham transaction or a technical change in operations. *See A. Dariano*, 869 F.2d at 519 ("the focus of the alter ego doctrine is on the presence of antiunion motivation in change in corporate structure.") In all alter ego determinations, there is an element of fraud that must be pleaded with particularity[1]. *Id.* Meeting all of the factors under the single employer element is not required to establish alter ego but unlawful motive or intent are critical inquiries. *Hannan*, 92 Or. App. at 789.

If the transaction is found to be a sham, then the nonsignatory employer will be bound by the agreement. *Gateway Structures, Inc. v. Carpenters 46 N. California Counties Conference Bd. of United Bhd. of Carpenters & Joiners of Am., AFL-CIO*, 779 F.2d 485, 488 (9th Cir. 1985). The burden is on the plaintiff to prove a "disguised continuation, technical change, or shams undertaken for the purpose of shifting union work to a non-union company." *S. Cal. Painters & Allied Trades, Dist. Council No. 36 v. Rodin & Co.*, 558 F.3d 1028, 1032 (9th Cir. 2009). *See also Nor-Cal*, 48 F.3d at 1472 (evidence of intent to avoid collective bargaining obligations included a transfer of several Nor–Cal projects to North Bay abruptly in the middle of the job).

The claim against Columbia requires Local 40 to plead with particularity the circumstances constituting the fraud. The simplified pleading requirement under Rule 8 is heightened by Rule 9(b) when "fraud is an essential element of a claim". FED. R. CIV. P. 9 (b).

---

[1] The requirement to plead fraud with particularity is relevant because the findings under the single employer theory and the alter ego theory depend on substantially the same considerations. *Valley Engineers*, 975 F.2d at 614. However, after the single employer elements are met, the next step depends on the theory of liability pursued. *Rodin*, 558 F.3d at 1031-32. The district court must defer to the Board's primary jurisdiction for the determination of a "single bargaining unit" only on claims under the single employer theory. *Nor-Cal Plumbing, Inc.*, 48 F.3d at 1470. In contrast, the alter ego theory does not require the Board to make that finding. *Carpenters' Local Union No. 1478 v. Stevens*, 743 F.2d 1271, 1277 (9th Cir. 1984).

"It is well-established in the Ninth Circuit that claims for fraud . . . must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of California, N.A.,* 290 F.Supp.2d 1101, 1141 (C.D.Cal.2003). As it stands, the complaint is devoid of any factual allegations or context that would allow the court to draw a reasonable inference that Columbia is an alter ego corporation. *See Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1108 (9th Cir. 2003)(Requirements of pleading special matters under Rule 9(b) has to be met when a complaint is "sounded in fraud"). Local 40 failed to comply with Rule 9(b).

In its complaint, Local 40 alleges that Columbia is an alter ego of Willamette, the signatory to the contract, and lists the elements of the single employer test. Local 40 neither mentions the word "fraud" or "sham", nor alleges facts that would necessarily constitute fraud. From the current pleadings, it cannot be reasonably inferred that Columbia is the alter ego of Willamette. The current allegations are insufficient to meet the plausibility test for the single employer elements, and the particularity test as to the fraud element of the alter ego theory. *See, e.g. Iqbal,* 556 U.S. at 664 ("while legal conclusions can provide the complaint's framework, they must be supported by factual allegations").

Viewing the allegations of the complaint in a light most favorable to Local 40, the court finds that Local 40's complaint is devoid of factual allegations to raise the inference of fraud and support a claim under the alter ego theory.

II. <u>Motion to Amend</u>

In its response to Columbia's motion to dismiss, Local 40 requests leave to file an amended complaint in the event the court finds the current allegations deficient. Columbia did not oppose the request in its reply. After the initial pleading stage, a party may amend its

"pleading only by leave of court or by written consent of the adverse party; and leave shall be given freely when justice so requires." FED. R. CIV. P. 15(a).

The decision whether to grant or deny leave to amend is within the discretion of the district court. *California v. Neville Chemical Co.,* 358 F.3d 661, 673 (9th Cir. 2003). Leave to amend, however, "is not granted automatically", *Jackson v. Bank of Hawaii,* 902 F.2d 1385, 1387 (9th Cir. 1990), although this rule is "to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir. 1990). Absent bad faith, undue delay, prejudice to the opposing party, or futility, a motion for leave to amend should be granted. *DCD Programs, ltd. V. Leighton,* 833 F.2d 183, 186 (9th Cir. 1987).

Columbia does not oppose Local 40's alternative request for leave to amend nor has it identified any particular prejudice it would suffer if the motion to amend is granted. There is no manifest bad faith behind Local 40's request and an amendment could eliminate the deficiencies in the complaint and render the claims legally sufficient in furtherance of justice. In addition, Local 40's request is not so late in the process as to cause undue delay or prejudice to Columbia.

*Conclusion*

Columbia's motion to dismiss should be GRANTED, without prejudice. Local 40's alternative request to amend the complaint to cure the deficiencies noted herein should be GRANTED.

*Scheduling Order*

The Findings and Recommendation will be referred to a district judge for review. Objections, if any, are due in **15 days**. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

Dated this 9th day of October, 2013.

/s/ John V. Acosta

JOHN V. ACOSTA
United States Magistrate Judge